646 So.2d 1125 (1994)
STATE of Louisiana
v.
Leslie CORVERS.
No. 94-KA-387.
Court of Appeal of Louisiana, Fifth Circuit.
November 16, 1994.
*1126 Lloyd J. LeBlanc, Jr., Asst. Dist. Atty., LaPlace, for plaintiff/appellee.
Robert T. Garrity, Jr., Harahan, for defendant/appellant.
Before GRISBAUM, WICKER and GOTHARD, JJ.
WICKER, Judge.
Leslie L. Corvers was charged by bill of information with violation of La.R.S. 14:98, operating a vehicle while intoxicated (DWI). On March 17, 1994 she was tried and found guilty as charged. Immediately after the verdict she was sentenced to serve ten days in the parish jail, which was suspended subject to payment of a fine of $500 and court costs, performance of four eight-hour days of community service, and attendance at a court-approved driver improvement school. She now appeals the conviction, contending that the evidence was insufficient to prove her guilty of driving while intoxicated.
There is no right of appeal from a conviction for this offense, which is a misdemeanor and thus not triable by a jury. La. Code Crim. P. art. 912.1. However, in the interest of judicial economy, this Court has previously exercised its supervisory jurisdiction in appeals of matters involving nonappealable judgments and has maintained such matters as applications for supervisory writs. State v. Boudreaux, 504 So.2d 1165, 1167 (La.App. 5th Cir.1987); State v. Easley, 517 So.2d 363, 364 n. 1 (La.App. 5th Cir.1987). Accordingly, we will review this matter under our supervisory jurisdiction.

FACTS
The evidence at trial consisted entirely of the testimony of Larry Leblanc, a deputy with the St. John Sheriff's Office. Deputy Leblanc testified that on September 13, 1993 at approximately 2:03 a.m. he was dispatched to Central Avenue in LaPlace in response to an accident call. Upon his arrival he learned that the defendant apparently was travelling south on Central at a high speed and lost control of her vehicle. It flipped several times and knocked down several mailboxes, struck a gas meter, and ended up a few feet from a trailer home.
According to Deputy Leblanc, the defendant was alone in her car and no one else was involved in the accident. When he got to the scene, the defendant was not in a condition for him to administer a sobriety test because she was hysterical and "completely uncooperative." He saw no beer cans or any type of alcoholic beverages in her vehicle. Leblanc identified Leslie Corvers as the woman who was at the scene of the accident.
Leblanc admitted he had not observed the accident itself, but stated he arrived on the scene "no more than a couple of minutes" after the time of the accident. He stated that the police had been called by the occupant of the mobile home, in whose yard the defendant had landed. He described the defendant as combative towards the deputies and the emergency medical technicians on the scene: "She didn't want to be fooled with at all. She had to be removed from the vehicle. And then while they were trying to restrain her neck in case of neck injuries, she was very combative with them." Leblanc testified that when he spoke to the defendant *1127 at the scene, he detected a strong odor of an unknown alcoholic beverage on her breath. Leblanc said that when he advised the defendant of her rights at the scene, she was conscious, she talked to him, and she signed the rights form. Because the defendant had sustained several injuries in the accident, however, she was taken to a hospital.
At the hospital Deputy Leblanc asked the defendant to undergo a blood test. She refused initially, but agreed to comply after he advised her that when an accident involves major damage and serious injury, state law requires a driver to give blood for testing. Leblanc observed a nurse draw blood from the defendant at the hospital. The deputy then sealed it up, transported it to the sheriff's office and put it in a cooler. The next morning he turned the cooler over to another deputy, who in turn transported it to the state police crime lab. Leblanc testified further, "Upon receiving the results back, I think it was a .16," a warrant was issued for the arrest of the defendant for driving while intoxicated. After the arrest warrant was issued, they contacted the defendant and she turned herself in at the jail.
On redirect the prosecution attempted to introduce the report of the blood analysis, but the defense objected on the ground that it was beyond the scope of redirect because it had not been discussed on cross examination. That objection was sustained by the trial judge. The report was not introduced into evidence, but Deputy Leblanc was asked if he personally saw the blood analysis report. He indicated he had and stated that the report indicated the defendant's blood contained.16 grams. This testimony differed slightly from the officer's testimony on direct examination when he testified that he "thought" the results were .16. Defense counsel did not object to these questions or answers on either direct or redirect examination.
In finding the defendant guilty, the trial court stated:
The Court has heard all of your arguments. While accepting what you said, the Court's also heard the witness testify the defendant had to be helped out of the car. He further testified that at the hospital he personally spoke to her with reference to drawing blood. And when she refused, he indicated to her it was the policy, State's policy she could not refuse to submit to the drawing of blood when there is an accident involving serious injury and major property damages. This Court finds that it is sufficient to establish that the defendant was, in fact, the driver of the vehicle involved in the accident on the said date. For that reason, based upon the testimony, there has been nothing to contradict the testimony that her blood alcohol level was point one six. The Court finds her guilty of Driving While Intoxicated.

ASSIGNMENTS OF ERROR NOS. 1 AND 2.
On appeal the defendant makes the following assignments of error:
1. The trial court found the defendant guilty of driving while intoxicated, absent evidence that the defendant was driving, or operating the vehicle.
2. The trial court found the defendant guilty of driving while intoxicated absent evidence of blood alcohol content, an intoxilizer reading, or field sobriety test.
By means of these assignments of error, the defendant contends that there is insufficient evidence to support the verdict.
To convict an accused of driving while intoxicated, the State must prove that the defendant was operating a motor vehicle or other means of conveyance and that the defendant was under the influence of alcoholic beverages or that his blood alcohol concentration was 0.10 percent or more by weight based on grams of alcohol per 100 cubic centimeters of blood, or that he was under the influence of a controlled dangerous substance. La.R.S. 14:98(A); State v. Fontenot, 408 So.2d 919, 921 (La.1981); State v. Kent, 610 So.2d 265, 267 (La.App. 5th Cir.1992); State v. Weilbaecher, 534 So.2d 973, 975 (La. App. 5th Cir.1988).
The defendant contends that there was not sufficient evidence of the elements of the offense that she was "operating" the vehicle and that she was "intoxicated while operating the vehicle." The State contends that the *1128 element of "operating" a motor vehicle was sufficiently established by the testimony of the investigating officer regarding the accident and by the fact that the defendant was the only person at the accident site when officers first arrived on the scene. As to the element of "intoxication," the State argues that this element was established by the officer's testimony about the strong odor of an alcoholic beverage on the defendant's breath and that an arrest warrant was issued based upon the blood alcohol test results of.16%.
The standard used by appellate courts to evaluate the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Kent, supra; State v. Williams, 580 So.2d 448, 449 (La.App. 5th Cir.1991).
"The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438. The facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Captville, 448 So.2d 676, 678 (La.1984).
1. Evidence of Operation of Vehicle
In the instant case, there were no eyewitnesses or direct proof that Leslie Corvers operated the vehicle. One could hypothesize that someone other than the defendant was driving the vehicle. Deputy Leblanc, the only trial witness, testified that he was the second officer to arrive at the accident scene and, although he did not observe the accident, he arrived no more than a couple of minutes after the accident. When he arrived, the defendant was alone in the vehicle. Leblanc testified that the defendant had to be removed from the vehicle, but he did not indicate whether it was because the doors were jammed and had to be pried open or because of the defendant's injuries. He did not recall whether the defendant was wearing her seat belt when he saw her in the vehicle.
Deputy Leblanc was not asked whether the defendant was sitting in the driver's seat before she was removed from the vehicle, nor was he asked whether anyone else was observed at or near the scene of the accident, nor was the resident who notified the police of the accident called as a witness. Additionally, there was no attempt to connect the defendant to the vehicle through a license number or vehicle registration. Under these facts it is conceivable that a person other than the defendant could have been driving and could have left the scene before the police arrived. However, that hypothesis is unreasonable. Considering the speed at which the officers arrived at the scene, it is unlikely that another driver, who probably would have suffered injuries, could have exited the vehicle and left the defendant in the short time before officers reached the scene. See State v. Boutte, 564 So.2d 398, 400-401 (La.App. 3rd Cir.1990); State v. Blancaneaux, 535 So.2d 1338 (La.App. 5th Cir. 1988); State v. Skeetoe, 501 So.2d 931, 940-941 (La.App. 2nd Cir.1987).
Neither State v. Trahan, 534 So.2d 73 (La.App. 3rd Cir.1988), nor State v. Willson, 534 So.2d 55 (La.App. 3rd Cir.1988), cited by the defendant, are dispositive, because the defendants in both cases admitted to operating the vehicles and the issue in each case was whether the defendant was intoxicated. In the case before us, on the other hand, the threshold issue is whether there is sufficient proof that defendant operated the vehicle.

2. Evidence of Intoxication
As to the second element (intoxication at the time of operation of the vehicle), the defendant argues that the evidence was insufficient to prove this element because there was no evidence introduced of a field sobriety test, an intoxilizer reading, or blood alcohol test results. The State argues that this element was established through the officer's testimony that he smelled a strong odor of *1129 alcoholic beverage and that a warrant for the defendant's arrest was based partially upon the blood alcohol analysis by the crime lab revealing defendant's blood alcohol content was .16%.
Chemical test results that a person's blood contains .10% or more grams of alcohol are presumptive evidence of alcohol influence. La.R.S. 32:662. However, when the legislature enacted La.R.S. 32:661 et seq., it did not intend to limit proof of intoxication to the various scientific methods contained in the statute. La.R.S. 32:662(C). On the contrary, the Louisiana Supreme Court has repeatedly indicated that intoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330, 1334 (La.1983). However, the mere fact that a person has consumed alcohol prior to a vehicular accident does not prove that he or she was "under the influence" or that the alcohol consumption caused the accident. State v. Garrett, 525 So.2d 1235, 1240 (La.App. 1st Cir.1988).
In State v. Bradley, 504 So.2d 1144, 1148-1149 (La.App. 5th Cir.1987), this Court found that the photo-electric intoximeter test results were "too confusing and inconclusive" to serve as a basis for the defendant's DWI conviction. However, the test results were not the only evidence. Based upon other evidence that the defendant was driving twenty miles below the speed limit, was weaving and crossing the center line, had red and watery eyes, had the odor of alcohol on his breath and clothes, staggered while walking, failed (but just barely) the field sobriety test, and admitted to drinking too much, this Court found sufficient evidence to prove the elements of the DWI offense.
In the instant case, however, there are no admitted test results which trigger the presumption. The only evidence regarding the test results is unobjected-to hearsay testimony of the officer's knowledge that defendant's blood test results revealed .16% of alcohol concentration. The failure to object to hearsay or secondary evidence, when admitted at trial, constitutes a waiver of the right to object to its admissibility. State v. Boutte, 384 So.2d 773, 776 (La.1980). "Ordinarily, if hearsay evidence is admitted without objection, it becomes substantive evidence and may be used by the trier of fact to the extent of any probative or persuasive power that it has." State v. Boutte, 384 So.2d at 776. See also, State v. Allien, 366 So.2d 1308, 1311 (La.1978); State in the Interest of B.J., 617 So.2d 238, 241 (La.App. 5th Cir.1993). Thus, the hearsay evidence of the test results can be used as substantive evidence of the defendant's intoxication.
However, the record indicates that the trial court used this hearsay evidence as entire proof of the element of intoxication, thereby giving this evidence too much probative power. First, there is nothing in the record to indicate that the chemical analysis of defendant's blood was performed as required by law. La.R.S. 32:663 requires that chemical analyses for purposes of testing suspected drunken drivers must be according to the methods approved by the Department of Public Safety and by an individual possessing a valid permit issued by the department for this purpose.
Second, the only evidence that a qualified person drew the blood was Deputy Leblanc's hearsay testimony that the blood was drawn by a "registered nurse." La.R.S. 32:664 requires that "only a physician, registered nurse, qualified technician, or chemist may withdraw blood" for testing suspected drunken drivers. In order for the trial court to give the State the benefit of the presumption under La.R.S. 32:662, the State must make a showing that there has been full compliance with the provisions of La.R.S. 32:663 and 32:664, which are conditions precedent to according validity to the tests and their results. State v. Bruins, 315 So.2d 293, 295 (La.1975). "The State must affirmatively show that the blood sample was taken and analyzed by persons who have the requisite qualifications and certification set forth in La.R.S. 32:663 and La.R.S. 32:664. Without such a showing ... the results revealed in the report will be given no evidentiary weight." Id.
Additionally, there is little evidence that the defendant's behavior manifested intoxication. Deputy Leblanc testified that he *1130 smelled a strong odor of alcohol on the defendant's breath. He also testified the defendant was uncooperative and hysterical. However, no field sobriety test was conducted because of the defendant's injuries, no alcoholic beverages were found in the vehicle, and no one testified about the manner in which the defendant was driving, other than the deputy's testimony that he was informed that the defendant was speeding. Therefore, there is insufficient evidence of the element of "under the influence." Accordingly, we conclude that the conviction must be reversed for insufficient evidence. Further, the evidence here does not support a conviction for any lesser and included offense that is a statutory responsive verdict. Thus, this court may not enter a modified verdict or remand for such action. See State v. Jones, 426 So.2d 1323, 1326 (La.1983); State v. Byrd, 385 So.2d 248, 251 (La.1980).
For the foregoing reasons, the conviction is reversed and the sentence is vacated.
CONVICTION REVERSED, SENTENCE VACATED.