696 So.2d 144 (1997)
STATE of Louisiana
v.
Christopher PENDELTON.
No. 96-KA-367 c/w 97-KA-206.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 1997.
*148 John M. Crum, Jr., District Attorney, William D. O'Regan, Assistant District Attorney, LaPlace, for Plaintiff-Appellee.
James T. Dixon, Jr., Indigent Defender Board, LaPlace, for Defendant-Appellant.
Before GRISBAUM, DUFRESNE and CANNELLA, JJ.
DUFRESNE, Judge.

STATEMENT OF THE CASE
On October 17, 1994, the St. John the Baptist Grand Jury filed a bill of indictment, charging defendant Christopher Pendelton with the first degree murder of Ernest Fleming, a violation of LSA-R.S. 14:30. James Cockerham, Jr. and Dan Robertson were charged as codefendants. The case was assigned to Division "B" of the Fortieth Judicial District Court, under docket number 94-455. On the same day, the grand jury charged defendant, under a separate bill of indictment, with the armed robbery of Albert Robinson, a violation of LSA-R.S. 14:64. Cockerham and Robertson were charged as codefendants. This case was also assigned to Division "B" of the Fortieth Judicial District Court, under docket number 94-456. Although the two cases were not consolidated below, they were treated as such by the trial court.
On October 19, 1994, defendant was arraigned, and pled not guilty as to both charges. On February 8, 1995, the state amended the indictment in case number 94-455, reducing the charge to second degree murder. Defendant was arraigned on the amended charge on the same day, and pled not guilty.
On April 18, 1995, the state filed a motion to sever defendants for trial. The trial court granted defendant's motion. The defense moved for, and was denied, a continuance. Defendant was tried in both cases by a jury of twelve. On April 21, the jury returned a verdict of guilty as charged as to both the armed robbery and the second degree murder. On October 5, 1995, the trial court sentenced defendant to the mandatory life term on the second degree murder conviction. On the same day, the trial court sentenced defendant to serve twenty years at hard labor on the armed robbery conviction. The judge ordered that the sentences be served concurrently with each other, and that they both be served without benefit of parole, probation, or suspension of sentence.
On October 10, 1995, defendant filed a motion for appeal only as to the second degree murder conviction, district court number 94-455. The motion was granted on October 23, 1995. The record in the case was subsequently lodged with this Court, and the case given docket number 96-KA-367. The case was assigned to this Court's October, 1996 docket. A preliminary review of the record, however, showed that defendant raised issues in the appeal of his murder conviction which were tied to his armed robbery conviction, and this Court could not properly address these issues without considering the record in the armed robbery case.
On September 25, 1996, this Court issued an Order removing case number 96-KA-367 from its October, 1996 docket, and directing the trial court to allow appellant thirty days in which to seek reinstatement of his appellate rights as to the armed robbery conviction. On October 15, 1996, defendant filed an application for post-conviction relief in district court case number 94-456, seeking to have his appeal rights reinstated. On the same day, the trial court issued an order reinstating defendant's right to appeal. Defendant subsequently filed an appeal of his armed robbery conviction in this Court, and the case was assigned docket number 97-KA-206. On March 6, 1997, this Court issued an Order consolidating cases 96-KA-367 and 97-KA-206 for docketing purposes.

STATEMENT OF FACTS
At 7:15 a.m. on September 8, 1994, Ernest Fleming and his uncle, Albert Robinson (a.k.a. Red McGee), arrived at the Kart-N-Karry convenience store in Reserve. The store's front faces Louisiana Highway 44 (the River Road); one side of the building faces East Thirteenth Street. The two men went inside the store, where Fleming purchased a can of beer and a pack of cigarettes. They then exited the store, and stood on the East Thirteenth Street side of the building. *149 Fleming watched for some friends who were to give him a ride to work.
An orange pickup truck driven by defendant, Christopher Pendelton, passed the store, heading upriver on Highway 44. The truck then turned around and entered the store's parking lot. Dan Robertson, a passenger in the truck, got out and asked Robinson and Fleming whether they had any drugs to sell. Robinson responded that he did not. James Cockerham exited the truck and approached Robinson. Defendant pointed a.410 gauge shotgun out of the sliding rear window of the truck, and ordered his companions to rob Fleming and Robinson. Cockerham, who carried a chrome-plated handgun, searched Robinson. He took Robinson's wallet, containing ninety dollars, from his pocket.
Robinson testified that defendant was highly agitated. Fleming was also nervous, and said, "Look man, I ain't done nothing." Defendant fired a shot, hitting Fleming in the chest. Fleming later died from his injuries. Defendant ordered Robertson and Cockerham into the truck, and the three men fled the scene. Robinson ran into the store and asked the owner, Thao Nguyen, to call police. Although Ms. Nguyen did not witness the shooting, she gave police the descriptions given her by Robinson.
Deputy Damian Schexnayder of the St. John the Baptist Parish Sheriff's Office picked up the homicide call over the police radio, and began patrolling the area in search of defendant and his accomplices. Schexnayder and his partner, Deputy Sanders, spotted the orange pickup truck on Highway 44 in Laplace, and attempted to head off the perpetrators. By this time Robertson was at the wheel. He pulled the truck off the road, and the three men fled on foot. Schexnayder notified department headquarters that he was continuing the pursuit on foot.
Schexnayder and Sanders located defendant hiding in a ditch. Captain Jacob Zeno and a Sergeant Watkins extricated defendant from the ditch and placed handcuffs on him. Sgt. Watkins advised defendant of his Miranda rights. Deputy Jason Weber read defendant his rights a second time, and transported defendant to the parish prison. Deputies also apprehended Robinson and Cockerham.
En route to the prison, defendant made the first of several statements to police. He told Dep. Weber that he and his companions had approached the victims at the Kart-N-Karry with the intention of robbing them. Defendant admitted that "we" shot Fleming, but did not specify who fired the shot. Defendant was transported to the detective bureau of the sheriff's office, where Detective Sergeant Andy Breaux advised defendant of his rights again. Defendant waived his rights, and agreed to answer questions from Det. Breaux and Det. Wayne Schaeffer. Defendant also signed a waiver of rights form. The questioning began at 8:02 a.m. on September 8. Defendant stated that Cockerham and Robertson picked him up at his home in St. Rose in the early morning hours of September 8. The three men rode to the Metairie/Kenner area, where they robbed drug dealers of money and drugs. The group moved on to Laplace, but did not find any victims there. Finally, defendant and his companions stopped at the Kart-N-Karry store in Reserve. Cockerham and Robertson got out of the truck, while defendant remained in the vehicle. Defendant told the detectives that Cockerham had a .25 caliber handgun, while Robertson carried the .410 gauge shotgun. According to defendant, Robertson shot Ernest Fleming. The three men then fled the scene, heading east on Highway 44. They discarded the weapons along the way. Defendant's statement was not recorded.
After defendant finished his statement, detectives Breaux, Schaeffer, and Bailey took defendant to the area along Highway 44 where the guns had allegedly been discarded. A search for the guns was unsuccessful.
Officers interviewed Albert Robinson on the morning of September 8, and learned that it was the man inside the truck who fired the .410 gauge shotgun at the victim. Captain Robert Hay advised defendant of his rights, and defendant agreed to submit to additional questioning. Additionally, defendant signed another waiver of rights form. Capt. Hay began questioning defendant at *150 10:40 a.m. on September 8. In response to Hay's interrogation, defendant admitted to having shot Ernest Fleming. This statement was not recorded.
Det. Breaux and Det. C.J. Destor questioned defendant at 12:45 p.m. on September 8. This interrogation was recorded on videotape and on audio tape. Prior to the questioning, defendant was advised of his rights once again, and signed a waiver of rights form. Defendant again admitted to his involvement in the robbery of Mr. Robinson and to the shooting of Ernest Fleming. Defendant stated that Dan Robertson held the.25 caliber handgun on Fleming and Robinson while James Cockerham searched the victims. According to defendant, Cockerham took twenty-five dollars in cash from Fleming, and drugs from Robinson. Defendant first stated he did not see Cockerham take any money from Robinson, but upon further questioning said Cockerham might have taken Robinson's wallet. The videotape of defendant's statement was presented to the jury at trial (State's Exhibit 11).
Sheriff's deputies located a .25 caliber handgun and a .410 gauge shotgun in the area where defendant had said they were discarded. On September 9, 1994, Det. Breaux presented Albert Robinson with three separate photographic lineups. Mr. Robinson identified Dan Robertson, James Cockerham, and defendant as the three men involved in the robbery and shooting. Robinson indicated that defendant was the man who stayed in the truck, and that Cockerham was the man who took his wallet.
At trial, defendant testified that he owns the shotgun that killed Ernest Fleming. He stated that he was outside his mother's home in St. Rose at 11:30 p.m. or midnight on the night of September 7, 1994. An acquaintance, Dan Robertson, stopped by in a truck. Dan was accompanied by James Cockerham, whom defendant did not know. Robertson asked whether he might borrow defendant's gun. In exchange, defendant asked Robertson for a ride to a local nightclub. Defendant put his gun under the seat of the truck, and the three men went to the nightclub.
After spending thirty minutes to an hour at the club, the three men got back into the truck. Robertson and Cockerham indicated they wanted to find a place to buy dope. With defendant at the steering wheel, the three men rode to the Metairie/Kenner area. According to defendant, Cockerham and Robertson robbed a group of young men, taking crack cocaine. The two men then smoked the crack cocaine in the truck as he drove. Defendant stated he does not smoke crack.
Defendant testified that he drove the truck to the New Orleans area. They were unsuccessful in finding anyone in New Orleans from whom they could buy drugs, and so they headed back towards St. Rose. They stopped in Laplace, but again could not find anyone to sell them drugs. As they passed the Kart-N-Karry store in Reserve, they saw Fleming and Robinson standing in the parking lot. Cockerham and Robertson told him to stop the truck because they thought Fleming and Robinson might have drugs.
Cockerham and Robertson got out of the truck and tried to negotiate a drug buy with Fleming and Robinson. Defendant testified that he remained in the truck. As he waited for his companions, defendant saw an unknown black man walk past the truck. The man looked as if he intended to go into the store. The man looked directly at defendant, at the same time lifting his shirt to reveal a silver object. Defendant retrieved his shotgun from under the seat, and pointed it out of the truck's rear window. Defendant testified that he aimed the gun at the unknown man, who was standing behind Fleming and Cockerham. Defendant warned the man not to come near the truck. The gun then fired accidentally, and the bullet hit Fleming.
Defendant testified that his companions got into the truck, and he drove away from the scene. After defendant turned down a dead-end street, Robertson insisted on driving the truck. Defendant testified that he did not see a .25 caliber handgun. He further stated that one of his companions threw his shotgun out the window as they made their escape.

ASSIGNMENT OF ERROR NUMBER ONE
The prosecutor improperly stated his personal opinion as to defendant's guilt in opening argument.

*151 DISCUSSION

By this assignment, defendant contends the prosecutor improperly commented on the evidence in his opening statement, and thereby prejudiced defendant's case. Defendant complains of the following remarks by the prosecutor:
Be that as it may, each element has to be proven beyond a reasonable doubt. And if I do not prove each element of the crime beyond a reasonable doubts (sic) it's your sworn duty to find the defendant not guilty. That, beyond a reasonable doubt, is a heavy burden indeed. I realize that's a heavy burden. Ladies and gentlemen, rest assured I would not be standing here before you if I didn't think I could carry that burden.
Defendant argues that, in expressing his belief that the evidence at trial would prove defendant's guilt beyond a reasonable doubt, the prosecutor unduly influenced the jury.
Under LSA-C.Cr.P. art. 841(A), "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Defendant did not lodge a timely objection to the prosecutor's remarks, and therefore did not preserve his right to raise the issue on appeal. State v. Sosa, 328 So.2d 889 (La.1976); State v. Mitchell, 606 So.2d 17 (La.App. 5 Cir.1992).
Even when addressed on its merits, this assignment has no substance. Article 766 of the Louisiana Code of Criminal Procedure provides, "The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge." When viewed as a whole, the prosecutor's opening statement did not prejudice defendant's case. The prosecutor was within the scope of Article 766 in stating generally that he believed the evidence at trial would prove defendant's guilt beyond a reasonable doubt. In State v. Copeland, 530 So.2d 526 (La.1988), cert. denied, Copeland v. Louisiana, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989), the defendant complained on appeal that the prosecutor improperly expressed his personal beliefs on the case in the opening statement. At issue were the following comments: "I believe ... that after we have presented the evidence to you that we have ... you will arrive at the just verdict" and "we believe that the evidence that will be presented to you will convince you of the same facts." Id. at 543-544. The Louisiana Supreme Court rejected the defendant's argument, reasoning that the prosecutor's remarks were not reflective of his personal beliefs; they were merely an indication of what he expected the evidence would show. The Supreme Court found that the prosecutor's statements were within the scope of Article 766, and that defendant was not prejudiced.
The remarks at issue in the instant case are comparable to those sanctioned by the Supreme Court in Copeland. Based on the foregoing, this assignment of error is without merit.

ASSIGNMENT OF ERROR TWO
The prosecutor improperly made reference during closing argument to other crimes allegedly committed by defendant.

DISCUSSION
Defendant here complains that he was prejudiced by the admission into evidence of his videotaped statement to officers (State's Exhibit Eleven), because the statement contains references to other crimes defendant committed. Specifically, defendant admitted in the course of his statement that he, Cockerham and Robertson cruised the Kenner area on the morning of the murder with the intention of robbing drug dealers. Defendant admitted to at least one such robbery. The state, defendant argues, should have edited the tape before introducing it at trial, in order to remove all references to other crimes. Defendant contends he was further prejudiced by the prosecutor's mention of the recorded statement in his closing argument.
LSA-R.S. 15:450 provides: "Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford." If the state seeks to introduce a confession which contains references to *152 other crimes, the defendant has two choices: he may either exercise his right to have the confession introduced in its entirety, or he may request that the trial court excise all references to other crimes. The defendant does not have the option of keeping the whole statement out, unless the statement is in itself inadmissible. State v. Bourque, 622 So.2d 198 (La.1993); State v. Glynn, 94-0332 (La.App. 1 Cir. 4/7/95), 653 So.2d 1288, writ denied, 95-1153 (La.10/6/95), 661 So.2d 464; State v. Vinet, 529 So.2d 1334 (La.App. 5 Cir.1988).
The record shows that defense counsel did not object at trial to the admission of the videotape. Nor did counsel ask that the tape be edited to remove references to other crimes. He is therefore not entitled to raise this issue on appeal. LSA-C.Cr.P. art. 841. Defendant contends the statement was in itself inadmissible, as the state did not comply with notice requirements. Again, defendant's argument is groundless, since there was no contemporaneous objection. In any case, defendant himself testified about these "other crimes" at trial, thus allaying any prejudice he might have suffered from the admission of the taped statement.
Since the defendant's statement was properly admitted into evidence, the prosecutor was entitled to discuss the contents of the statement in closing argument. LSA-C.Cr.P. art. 774 provides, in part: "The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." Further, defendant is precluded from raising this matter on appeal, as he failed to object to the state's closing argument, or to request an admonition or mistrial. State v. Francis, 95-194 (La.App. 5 Cir. 11/28/95), 665 So.2d 596. Based on the foregoing, this assignment of error is without merit.

ASSIGNMENT OF ERROR THREE
Various items of clothing were improperly admitted into evidence without either an adequate showing of the chain of custody or sufficient identification with the defendant.

DISCUSSION
Defendant here complains that the trial court erred in admitting several state exhibits into evidence at trial. This issue was not preserved for appeal, as each of the challenged exhibits was admitted at trial without any objection from the defense. The matter is therefore not properly before this Court. LSA-C.Cr.P. art. 841. Based on the foregoing, this assignment of error is without merit.

ASSIGNMENT OF ERROR FOUR
Detective Andy Breaux was improperly allowed to offer hearsay evidence involving investigation of the alleged crime.

DISCUSSION
By this assignment, defendant contends that a good deal of Det. Breaux's testimony at trial was hearsay, and as such was inadmissible. The hearsay rule generally excludes out-of-court statements offered to prove the truth of the matter contained in them, under the rationale that such statements are not made under oath, and their truth cannot be tested by cross-examination. LSA-C.E. arts. 801, 802; State v. Arbuthnot, 367 So.2d 296 (La.1979).
The record does not show that defendant lodged a hearsay objection to Det. Breaux's testimony. Therefore, defendant may not now challenge the admissibility of said testimony. Hearsay evidence not objected to constitutes substantive evidence which may be used by the trier of fact to the extent of any probative or persuasive value it may have. State v. Boutte, 384 So.2d 773, 776 (La.1980); State v. Corvers, 94-387 (La. App. 5 Cir. 11/16/94), 646 So.2d 1125.
Addressed on its merits, this assignment of error has no substance. Det. Breaux's testimony regarding statements Deputy Jason Weber made to him in the course of the murder investigation was indeed hearsay. However, any error committed was harmless, as Deputy Weber himself testified at trial, corroborating Breaux's testimony. In State v. Lavigne, 95-0204 (La. App. 4 Cir. 5/22/96), 675 So.2d 771, 775, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140, the court held that "introduction of statements *153 objected to as hearsay which are merely corroborative and cumulative of other testimony presented by the state is harmless error." See also, State v. Rogers, 94-997 (La.App. 5 Cir. 5/30/95), 656 So.2d 768. Det. Breaux's testimony regarding inculpatory statements defendant made to him did not constitute hearsay. They are statements made by a party, and as such are considered non-hearsay under LSA-C.E. art. 801(D)(2). It is also noted that defendant testified at trial. Based on the foregoing, this assignment of error is without merit.

ASSIGNMENT OF ERROR FIVE
Albert Robinson, one of the alleged victims, was improperly allowed to testify as to defendant's mental processes and intent.

DISCUSSION
Defendant here contends that trial court erred in allowing state's witness Albert Robinson give his opinion as to defendant's frame of mind at the time of the shooting. Defendant specifically objects to the following exchange between the prosecutor and Robinson:
Q. Did that gun go off accidentally?
A. I don't think so. That man got spooked and shot. That man looked like he been riding all night, strung.
Again, defendant alleges an error to which he raised no contemporaneous objection at trial. This issue is therefore not properly before this Court. LSA-C.Cr.P. art. 841.
Generally, a lay witness may only testify to facts within his knowledge, and not to impressions or opinions. A witness is, however, permitted to draw reasonable inferences based on personal observations. LSA-C.E. art. 701; State v. Clayton, 570 So.2d 519 (La.App. 5 Cir.1990); State v. Hall, 519 So.2d 274 (La.App. 5 Cir.1988). The prosecutor's question in this instance went directly to an issue of fact, that of intent. The question of a defendant's criminal intent is one properly reserved for the trier of fact. State v. Hidalgo, 95-319 (La.App. 5 Cir. 1/17/96), 668 So.2d 1188. However, here the evidence of defendant's guilt was so overwhelming that this issue is harmless error. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER SIX
The convictions for both second degree felony murder and the underlying armed robbery violated the double jeopardy clauses of both the Louisiana and United States constitutions.

DISCUSSION
Defendant here contends that the state used the armed robbery of Albert Robinson as an enumerated felony to support his second degree murder charge, and that he was thereby subjected to double jeopardy.
Louisiana courts have used two tests in examining violations of double jeopardy. The "distinct fact" test, commonly referred to as the Blockburger test, is taken from the United States Supreme Court's holding in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In State v. Knowles, 392 So.2d 651, 654 (La.1980), the Louisiana Supreme Court outlined the Blockburger criteria for examining double jeopardy violations:
... the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not
The second test is the "same evidence test". The Louisiana Supreme Court explained this test in State v. Steele, 387 So.2d 1175, 1177 (La.1980):
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial ... The "same evidence" test is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct. *154 Although the Louisiana Supreme Court has accepted both the Blockburger test and the same evidence test, it has principally relied on the "same evidence" test to evaluate double jeopardy claims. State v. Miller, 571 So.2d 603 (La.1990).
The double jeopardy clause prohibits prosecution for both a felony murder and the underlying felony. State v. Pittman, 95-382 (La.App. 5 Cir. 10/1/96), 683 So.2d 748; State v. Coates, 27,287 (La.App. 2 Cir. 9/27/95), 661 So.2d 571, writ denied, 95-2613 (La.2/28/96), 668 So.2d 365. However, it is not double jeopardy to prosecute specific intent murder and armed robbery. See Taylor v. Whitley, 933 F.2d 325 (5th Cir.1991), cert. denied, 503 U.S. 988, 112 S.Ct. 1678, 118 L.Ed.2d 395 (1992). The indictment in the instant case does not specify whether defendant was charged with felony-murder under LSA-R.S. 14:30.1(A)(2), or a specific intent killing under LSA-R.S. 14:30.1(A)(1). Additionally, the trial court instructed the jury as to both sections of the statute. However, defendant contends that it was the state's intention to prove a felony murder, with armed robbery as the enumerated felony.
The following portion of the prosecutor's opening statement supports defendant's assertion that the state sought to prove a felony-murder:
Second degree murder, killing of a human being. That definitely went on. In this case it doesn't matter whether he had specific intent to kill him or specific intent to cause bodily harm, because the State intends to show that this occurred during the course of a robbery. Which makes intent totally irrelevant.
The prosecutor made similar remarks in his closing argument:
In his opening [defense counsel] conceded the fact that the defendant killed Ernest Fleming III. Okay? Now, the difference being that it was supposedly unintentional. But we know, and we're going to know from the Judge's instructions, that intent has nothing to do with this crime. Even if it was accidental it's still murder. Why? Because it occurred during the course of a robbery. So even if you find there was no intent to kill or intent to cause bodily harm it's still guilty as charged.
The use of defendant's armed robbery of Robinson as the enumerated felony to support the second degree murder would constitute double jeopardy; however, the armed robbery of Robinson need not have been used as the underlying felony to support the murder conviction in the instant case. The evidence at trial showed that defendant and his companions also committed an armed robberyor an attempted armed robbery on Ernest Fleming, the murder victim. Eyewitness Albert Robinson testified at trial that defendant pointed his gun at him and Fleming, and ordered Cockerham and Robertson to "rob the motherf* * * * *s". Robinson further testified that Fleming put his hands in the air. According to Robinson, the perpetrators did not take anything from Fleming. However, defendant himself said in his recorded statement (State's Exhibit Eleven) that he saw James Cockerham take a twenty dollar bill and a five dollar bill from Ernest Fleming's pocket. Even if the perpetrators took nothing from Fleming, the evidence supports an attempted armed robbery, which is one of the enumerated offenses in LSA-R.S. 14:30.1(A)(2).
The attempted armed robbery or armed robbery of Ernest Flemingand not the armed robbery of Albert Robinsonwas the underlying felony supporting the second degree murder conviction, thus there is no double jeopardy. Based on the foregoing, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
The life sentence imposed is excessive and constitutes cruel and unusual punishment prohibited by both the Louisiana and United States constitutions.

DISCUSSION
Defendant here contends that his life sentence for second degree murder constitutes cruel and unusual punishment. However, the defendant is procedurally barred from challenging his sentence. LSA-C.Cr.P. art. 881.1 provides:
A. (1) Within thirty days following the imposition of sentence or within such longer *155 period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
B. If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.
C. The trial court may deny a motion to reconsider sentence without a contradictory hearing.
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
In following the provisions of Article 881.1, this Court has found that defendants who fail to file the proper motion to reconsider sentence are precluded from raising on appeal issues regarding their sentences. State v. Holmes, 94-907 (La.App. 5 Cir. 3/15/95), 653 So.2d 642; State v. Hutson, 613 So.2d 1134 (La.App. 5 Cir.1993); State v. Carter, 609 So.2d 261 (La.App. 5 Cir.1992). See also, State v. Mims, 619 So.2d 1059 (La.1993).
The record in the instant case shows that defendant did not file the required motion to reconsider sentence. Furthermore, defendant did not object to the sentence as excessive at the time of sentencing. Counsel merely stated a "general objection" for the record. It is noted that in State v. Mims, supra, the Louisiana Supreme Court was silent as to whether the failure to comply with Article 881.1 precludes even a claim of constitutional excessiveness.
Both the United States and Louisiana constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. 8; La. Const. of 1974, Art. I, Sect. 20. A sentence is generally considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992); State v. Munoz, 575 So.2d 848 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La.1991). Louisiana courts have consistently held that a mandatory sentence of life imprisonment for second degree murder does not constitute cruel and unusual punishment. State v. Graham, 422 So.2d 123 (La.1982), appeal dismissed, Graham v. Louisiana, 461 U.S. 950, 103 S.Ct. 2419, 77 L.Ed.2d 1309 (1983); State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, writ denied, 96-0388 (La.9/13/96), 679 So.2d 102; State v. Johnson, 553 So.2d 865 (La.App. 1 Cir.1989), writ denied, 558 So.2d 600 (La.1990); State v. Willis, 552 So.2d 39 (La.App. 3 Cir.1989), writ denied, 560 So.2d 20 (La.1990), reconsideration denied, 563 So.2d 894 (La.1990). Considering this, along with the facts surrounding the murder, the trial court did not err in sentencing defendant to the mandatory life term. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER EIGHT
Appointed counsel for the appellant was ineffective, thus violating his right to counsel as guaranteed by both the Louisiana and the United States constitutions.

DISCUSSION
Defendant contends that he did not receive a fair trial due to errors and omissions of his trial counsel. Defendant complains that counsel erred in failing to file certain motions and to make timely objections where needed to preserve issues for appeal. Defendant further argues that counsel failed to file applicable post-verdict motions.
The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through an application for post conviction relief rather than direct appeal, so as to afford the parties an evidentiary hearing before the trial court and create an adequate record for review. State v. Truitt, 500 So.2d 355 (La. 1987); State v. Brown, 384 So.2d 983 (La. 1980). It is well settled, however, that where the record contains sufficient evidence to decide *156 the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780 (La. 1993); State v. Junior, 542 So.2d 23 (La.App. 5 Cir.1989), writ denied, 546 So.2d 1212 (La. 1989).Here the record is sufficient to allow this Court to decide this issue.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffective assistance of counsel, a two-pronged test is employed. The defendant must show that (1) his counsel's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, 94-1361 (La.11/4/94), 644 So.2d 1055. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; State v. Serio, 94-131 (La.App. 5 Cir. 6/30/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388.
Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983). Because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must be specific to the facts of the case. State v. Peart, supra.
Defendant first complains that trial counsel was deficient in failing to file various pre-trial motions, including a motion for a bill of particulars, and motions to suppress the confession and the physical evidence. The record in the murder case does not support defendant's assertion that counsel failed to file a motion for a bill of particulars. Counsel did in fact file a motion for a bill of particulars, which included requests for the facts upon which the murder charge was based.
The record shows that counsel did not file any motions to suppress the physical evidence, or the identification. For purposes of an ineffective assistance of counsel claim, the filing of pretrial motions is squarely within the ambit of the attorney's trial strategy, and counsel is not required to engage in futility. State v. LeBeau, 621 So.2d 26 (La.App. 2 Cir.1993), writ denied, 629 So.2d 359 (La.1993). Appointed counsel was not deficient in failing to file pre-trial motions to suppress evidence, as the record does not show that defendant was subjected to unlawful search and seizure. Similarly, the identification procedures (i.e. photographic lineups) performed by police were not suggestive. There was therefore no need for defense counsel to file a motion to suppress the identification.
Defendant argues that his attorney failed to file a pre-trial motion to suppress the confession. The record shows that defendant gave the videotaped confession voluntarily, after having been fully apprised of his Miranda rights at least three times. In fact, the tape depicts the officers reading defendant his rights, along with defendant's responses. Additionally, defendant signed a waiver of rights form, acknowledging that he understood his rights, and that he waived them freely and voluntarily. The tape does not show any coercive or threatening behavior on the part of the interrogating officers. Moreover, defendant's testimony at trial was substantially the same as it was in the taped statement.
Defendant urges that his Defense counsel failed to remove from defendant's taped confession any references to "other crimes". Evidence of other crimes is generally inadmissible, unless the probative value of the evidence outweighs its prejudicial effect, and unless other safeguards are met. State v. Bourque, 622 So.2d 198 (La.1993); State v. Foret, 96-281 (La.App. 5 Cir. 11/14/96), 685 So.2d 210. This rule was established because, "in the determination of guilt or innocence, the admission of evidence of other crimes which the defendant has committed creates the risk the defendant will be convicted of the present offense simply because he is a `bad person'." State v. Bourque, *157 622 So.2d at 233. An exception to the general rule is where other crimes evidence is offered for a purpose other than to simply show that defendant is a "bad person". State v. Foret, supra.
Other crimes evidence may be admitted under the exceptions set forth in LSA-C.E. art. 404 B(1), which provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The portions of defendant's taped statement in which he referred to armed robberies of drug dealers he committed in Jefferson Parish prior to the murder were admissible under Article 404 to show motive, intent, and knowledge. However, it does not appear that the state gave the defense proper notice that it intended to use evidence of other crimes. LSA-C.E. art. 404 B(1); C.Cr.P. art. 720. Defense counsel specifically asked in a discovery motion whether the state intended to use evidence of other crimes, and the state responded that it did not. Although defense counsel may have been deficient in failing to object to the other crimes references in the taped confession, defendant was not prejudiced by counsel's error. As was discussed above, defendant himself testified regarding the "other crimes" at issue.
At trial, the state introduced the testimony of Gina Caronna, the owner of the Ford pickup truck driven by defendant at the time of the murder. She identified State's Exhibit 30 as a copy of her truck's registration. Ms. Caronna testified that the truck was stolen in River Ridge on September 1, 1994, a week before the murder. She did not know who took the truck, and there were no eyewitnesses to the theft. Defense counsel erred in failing to object to this "other crimes" evidence and the record does not show that the state gave proper notice that it intended to introduce this evidence.
However, considering the weight of the state's evidence, this omission alone did not affect the outcome of the trial. Defendant himself admitted at trial that he knew the truck was stolen when he drove it on the morning of the murder. Defendant testified that when Dan Robertson and James Cockerham picked him up at his mother's house, Robertson asked him to drive the truck because "`... we don't want to get stopped in this truck because it don't belong to us.'"
Defendant complains that defense counsel allowed, without objection, the admission of various items of clothing introduced by the state. Defendant argues hereas he does in Assignment of Error Number Threethat the state did not establish the relevancy of these exhibits, nor did it lay a proper foundation for their admission into evidence.
State's Exhibit Three was a pair of Nike tennis shoes found in a ditch in Laplace. Exhibit Six was a black hat and a purple pullover shirt. Exhibit Eight was a pair of Levi's blue jeans. Exhibit Twenty was a pair of Converse black and white tennis shoes and a pair of white jeans. Exhibit Twenty-one was a blue Hanes t-shirt. Exhibit Twenty-four was a pair of gray Levi's jeans. Defendant contends that the state did not establish a connection between these items and defendant. He further argues that counsel was deficient in failing to lodge timely objections to the admission of this evidence.
Unless otherwise provided, all relevant evidence is admissible at trial. LSA-C.E. art. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." LSA-C.E. art. 401. LSA-C.E. art. 403 provides that even relevant evidence may be excluded "if its probative *158 value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."
Before it can be admitted at trial, demonstrative evidence must be properly identified. Accordingly, it must be established that it is more probable than not that the object is one connected with the crime charged. The identification may be visual, that is, testimony that the object introduced is one connected with the case. The identification can also be accomplished through chain custody, by tracing the object from the time it was seized to the time it was offered in evidence. State v. Sweeney, 443 So.2d 522 (La.1983); State v. Landry, 388 So.2d 699 (La.1980), cert. denied, Landry v. Louisiana, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); State v. Kelson, 94-263 (La.App. 5 Cir. 11/16/94), 646 So.2d 1049, writ denied, 96-1884 (La.2/21/97), 688 So.2d 520.
It appears that State's Exhibit Eight was properly admitted at trial. The blue jeans were initially identified by Deputy Michael Davis, a crime scene technician. Deputy Davis testified that he received the jeans from Sgt. Harry Troxlair. Davis, who took police photographs of the crime scene, testified that the blue jeans looked like the pair worn by the victim. Sgt. Troxlair in turn testified that he obtained the blue jeans from Dr. Susan Garcia, the pathologist who performed Ernest Fleming's autopsy. Troxlair testified that Garcia took the jeans off Fleming's body. The evidence shows a sufficient connection between the blue jeans and the crime charged.
Deputy Damien Schexnayder, who assisted in apprehending defendant and his companions, identified Exhibits Twenty and Twenty-One as clothing worn by one of defendant's accomplices. Schexnayder made a valid visual identification of the evidence. Moreover, this testimony was relevant to show identity. There was no cause for counsel to object to the admission of this exhibit.
Deputy Jared Vicknair, a jailer with the St. John Sheriff's Office, identified Exhibit Twenty-four as the pants seized from one of the three suspects on the day they were arrested. Vicknair did not have independent memory of which suspect had worn the pants, but testified that the evidence label bore defendant's name. He further testified that the pants were seized because there was blood on them. These pants were relevant for identification purposes, and Vicknair's testimony established a sufficient connection between the evidence and the crime charged. There was therefore no need for counsel to lodge an objection to the admission of this exhibit.
It appears, from the record, that Exhibits Three and Six were only identified by Deputy Davis. Davis was the crime scene technician, and as such was the custodian of evidence collected by other officers. He was not able to give any testimony as to the significance of these exhibits to this case. Because the state did not establish the relevancy of these exhibits, or their connection to the crime charged, defense counsel could have objected to their admission into evidence. However, considering the overwhelming evidence against defendant, counsel's failure to lodge an objection here did not affect the outcome of the case.
Defendant argues that counsel was deficient in failing to object timely to hearsay testimony introduced by the state. Defendant's hearsay argument is fully discussed earlier under Assignment of Error Number Four. As stated in that discussion, some of the testimony of which defendant complains was hearsay. Counsel was remiss in failing to lodge an objection to that testimony. However, the improper admission of Det. Breaux's hearsay testimony constitutes harmless error. Breaux's testimony regarding statements made by defendant himself was not hearsay, and counsel did not err in failing to object to its introduction.
Defendant argues that counsel erred in failing to object to improper opinion testimony given by state's witness Albert Robinson. As is discussed previously under Assignment of Error Number Five, Mr. Robinson's testimony that the shooting was not accidental was improper. Counsel could have lodged an objection.
*159 Defendant complains that trial counsel was remiss in failing to file the appropriate post-trial motions on his behalf. As defendant claims, counsel did not file a motion to reconsider sentence on his behalf. This does not by itself constitute ineffective assistance of counsel. Defendant does not show a reasonable probability that, but for counsel's error, his sentences would have been different. See State v. Lee, 26,542 (La. App. 2 Cir. 5/12/94), 636 So.2d 634. As is discussed supra under Assignment of Error Number Seven, defendant's life sentence for second degree murder is the sentence mandated by law. Moreover, Louisiana courts have consistently found that a sentence of life imprisonment for second degree murder does not constitute cruel or unusual punishment. (See authorities cited under Assignment of Error Number Seven). Defendant's twenty year sentence for armed robbery was far from the statutory maximum of ninety-nine years. Considering the circumstances surrounding the robbery, defendant's sentence is not disproportionate to the offense. See State v. Green, 27,652 (La.App. 2 Cir. 1/24/96), 666 So.2d 1302; State v. Johnson, 94-1564 (La.App. 1 Cir. 10/6/95), 671 So.2d 461, writ denied, 95-2715 (La.2/16/96), 667 So.2d 1050 (La.1996).
Counsel failed to file a motion for post verdict judgment of appeal on defendant's behalf. LSA-C.Cr.P. art. 821 provides:
A. The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post verdict judgment of acquittal must be made and disposed of before sentence.
B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
C. If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
D. If a post verdict judgment of acquittal is granted or if a verdict is modified, the state may seek review by invoking the supervisory jurisdiction of or by appealing to the appropriate appellate court.
E. If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
Counsel was not deficient in failing to file a motion under Article 821. As is discussed more fully under Assignment of Error Number Nine, the evidence at trial supports a finding of guilty. Moreover, defendant is able to address the issue of sufficiency of the evidence on appeal. He therefore forfeited no rights by failing to file a motion under Article 821.
Defendant argues that, while most of the errors he alleges would not have, individually, affected the outcome of the trial, the errors together were great enough to have affected the verdict. This Court has held that, in assessing whether a defendant has received effective assistance of counsel, there is a strong presumption that the conduct of counsel falls within the wide range of responsible professional assistance. State v. Soler, supra. Using this standard, counsel's errors and omissions do not require reversal. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER NINE
The evidence presented was legally insufficient to prove guilt of the charged offenses beyond a reasonable doubt.

DISCUSSION
The constitutional standard for testing the sufficiency of evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based in proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Honore, *160 564 So.2d 345 (La.App. 5 Cir.1990), writ denied, 569 So.2d 968 (La.1990). It appears that the evidence at trial was sufficient to satisfy the standard in Jackson.
LSA-R.S. 14:30.1 provides:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
(3) When the offender unlawfully distributes or dispenses a controlled dangerous substance listed in Schedules I or II of the Uniform Controlled Dangerous Substances Law [FN1] which is the direct cause of the death of the recipient who ingested or consumed the controlled dangerous substance.
(4) When the offender unlawfully distributes or dispenses a controlled dangerous substance listed in Schedules I or II of the Uniform Controlled Dangerous Substances Law to another who subsequently distributes or dispenses such controlled dangerous substance which is the direct cause of the death of the person who ingested or consumed the controlled dangerous substance.
The state could have prosecuted defendant under a theory of specific intent, or under a felony-murder theory. As is discussed earlier under Assignment of Error Number Six, it appears the state intended to prove the felony-murder theory. Defendant said in his videotaped confession, as well as in his trial testimony, that he fired the shot that killed Ernest Fleming. Moreover, Albert Robinson testified that he saw defendant shoot and kill Ernest Fleming. The state clearly proved the element of a killing. As is also discussed above, the record shows that the state proved an armed robbery or an attempted armed robbery of Ernest Fleming, thus satisfying the element of an underlying felony.
Our review of the record indicates the state sufficiently proved the armed robbery of Albert Robinson. To support a conviction for armed robbery, the state must prove beyond a reasonable doubt (1) a taking (2) of anything of value (3) from the person of another (4) by use of force or intimidation (5) while armed with a dangerous weapon. LSA-R.S. 14:64(A); State v. Brown, 591 So.2d 791, 794 (La.App. 5 Cir.1991). Mr. Robinson testified at trial that one of defendant's accomplices took his wallet, containing ninety dollars, from his pocket, thus satisfying the first three elements.
Robinson further testified that defendant pointed a .410 gauge shotgun at him and directed his accomplices to "rob them motherf* * * * *s." According to Robinson, defendant told his companions to "take every f* * *ing thing they got, money, drugs, anything." Robinson identified State's Exhibit Four as defendant's shotgun. Robinson testified that the subject who took the wallet from him had a chrome-plated handgun. When Robinson saw the guns brandished by defendant and his accomplice, he immediately put his hands in the air and did what he was told to do. (Id.). This testimony satisfies the fourth and fifth elements of armed robbery.
Considering the foregoing, and viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to support the jury's verdicts of guilty of second degree murder and armed robbery. It is further noted that the defendant did not specifically allege how the state was deficient in proving the crimes charged. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TEN (ERRORS PATENT DISCUSSION)
LSA-C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
*161 For purposes of an error patent review, the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Defendant complains that the verdict sheet in the armed robbery case, Number 97-KA-206, does not contain the signature of the jury foreperson, and is therefore incomplete. Initially, the second page of that verdict sheet was missing from the record lodged with this Court. However, the district court later supplemented the record with a complete copy of the verdict sheet. No other errors patent are noted in the record of either case.
The record further reveals that the defendant was not given credit for time served as required by LSA-C.Cr.P. art. 880. We amend the sentence to give credit for time served.

DECREE
Accordingly, the convictions are affirmed and the sentences are amended to give credit for time served and affirmed as amended.
CONVICTIONS AFFIRMED, SENTENCES AMENDED AND AFFIRMED AS AMENDED.