750 So.2d 313 (1999)
STATE of Louisiana
v.
Jerrick PUGH.
No. 99-KA-851.
Court of Appeal of Louisiana, Fifth Circuit.
December 21, 1999.
*314 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Rebecca J. Becker, Quentin Kelly, Joe Aluise, Assistant Dist. Attys., 24th Judicial District, Gretna, LA, for Plaintiff-Appellee.
Laurie A. White, New Orleans, LA, for Plaintiff-Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and SUSAN M. CHEHARDY.
DUFRESNE, Judge.
The Jefferson Parish District Attorney filed a bill of information charging the defendant, Jerrick Pugh, with one count of distribution of cocaine in violation of LSA-R.S. 40:967A. Following the resolution of numerous pre-trial motions, the matter proceeded to trial before a twelve person jury. At the conclusion of the proceedings, the jury found the defendant guilty as charged. The trial court thereafter sentenced the defendant to five years imprisonment at hard labor. It is from this conviction and sentence that the defendant now appeals.

FACTS
On September 9, 1997, Agent Kyle Pierce of the Jefferson Parish Sheriff's Office participated in an undercover narcotics operation in Gretna. On that day, he drove to the 300 block of Ruby Street in an unmarked vehicle equipped with video and audio equipment. Once there, he encountered a black male wearing blue shorts and a maroon Florida State jersey. Agent Pierce asked the individual if he had two "twenties." He answered in the affirmative, took two rocks of crack cocaine out of his mouth and handed them to the officer. In exchange, the officer handed the individual $40.00 in cash.
*315 Officer Pierce left the scene and met the surveillance agents, Thomas Blankenship and Mike Crossen, at a pre-arranged location. Pierce turned over the narcotics and the videotape of the transaction. All three officers then returned to police headquarters where they viewed the videotape. Since they were unable to identify the person on videotape, Agents Blankenship and Crossen decided to return to the area where the transaction took place. Upon returning to the area, the agents noticed an individual wearing the same clothing that the seller was wearing as described by Agent Pierce and as seen on the videotape. They stopped the suspect, asked him his name, and took his picture. Approximately three days after the transaction, Agent Pierce viewed a photographic lineup, at which time he positively identified the defendant as the individual from whom he purchased the cocaine. The defendant was subsequently arrested and charged with the instant offense.
In addition to the testimony of the officers, Thomas Angelica, an expert in the testing, analysis and identification of controlled dangerous substances, testified at trial. Mr. Angelica tested the two rock-like objects purchased in this case and determined that they were, in fact, crack cocaine.

JURY CHARGE
By this assignment, the defendant argues that his conviction should be overturned because the trial court's jury charge regarding reasonable doubt was constitutionally defective. Specifically, the defendant complains that the charge at issue was misleading and confused the jury as to their ability to consider lack of evidence presented at trial in making a determination as to reasonable doubt.
LSA-C.Cr.P. 804A provides that the court shall charge the jury as follows:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required to, define "the presumption of innocence" or "reasonable doubt" or give any other or further charge upon the same than that contained in this article.
In the present case, over the defendant's objection, the trial court charged the jury, in part, as follows:
You are prohibited by law in your oath from going beyond the evidence to seek for doubts upon which to acquit the defendant, but you must confine yourselves strictly to a dispassionate consideration of the testimony given upon the trial. You must not resort to extraneous facts or circumstances in reaching your verdict. That is you must not go beyond the evidence to find facts or circumstances creating doubts, but you must restrict yourselves to the evidence that you heard in the trial of this case, or the lack of evidence.
We find that the trial judge, in instructing the jury, complied with the requirements of LSA-C.Cr.P. art. 804. Moreover, we note that this court on several occasions has found jury charges similar to the one at issue to be acceptable. See State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, writ denied, 97-1255 (La.10/13/97), 703 So.2d 612; State v. Mayeaux, 570 So.2d 185 (La.App. 5 Cir. 1990), writ denied, 575 So.2d 386 (La. 1991); and State v. Humphrey, 544 So.2d 1188 (La.App. 5 Cir.), writ denied, 550 So.2d 627 (La.1989).
*316 To support his argument that the charge at issue is constitutionally defective, the defendant relies heavily on State v. McDaniel, 410 So.2d 754 (La.1982), and State v. Gibbs, 355 So.2d 1299 (La.1978). However, we find that the defendant's reliance on these cases is misplaced. Unlike the charges in those two cases, the trial judge, in the instant case, explicitly told the jury that they could consider the lack of evidence. Considering the foregoing, we find no merit to the defendant's argument.

MOTION TO SUPPRESS
In his second assigned error, the defendant challenges the trial court's denial of his motion to suppress identification.
At the suppression hearing, Agent Kyle Pierce testified about the circumstances surrounding the narcotics transaction and his subsequent identification of the defendant. Regarding the identification, Agent Pierce testified that he viewed a photographic lineup on September 12, 1997, and positively identified the defendant as the person who sold him the crack cocaine.
On cross-examination, Officer Pierce testified that he had made over five hundred undercover buys in a period of two and a half years. The agent further testified that he viewed the videotape of the drug transaction right after the buy and again before viewing the photographic lineup. The agent admitted that his identification of the defendant in the lineup was based on the video and not his independent recollection.
Agent Thomas Blankenship also testified at the suppression hearing. According to Officer Blankenship, he and the other surveillance officer met with Pierce after the purchase and returned to the office, where they viewed the videotape of the transaction. After viewing the videotape, Agent Blankenship, along with his surveillance partner, returned to the area where the purchase was made in an attempt to identify the seller based on the clothes he was wearing. Agent Blankenship testified that they observed the defendant wearing the same clothing described by the undercover agent. The officers then stopped the defendant, filled out a field interrogation card, and took a photograph of the defendant. Agent Blankenship testified that the defendant initially gave a false name, but that his real name was learned from his girlfriend and then verified by the defendant.
After considering the testimony at the suppression hearing, the trial judge denied the defendant's motion to suppress the identification, stating as follows:
I find that the lineup was not suggestive in any way. There were six photographs. The tape is merely an adjunct to this whole proceeding. It is more representative of actually what happened than any lineup. It certainly wasn't suggestive; it is what happened. It is not a recollection. It is a record of that event, and I think it's absolutely permissible. I'm going to overrule it, deny the motion to exclude the identification.
The defendant now challenges this denial, asserting that the identification was suggestive and that there was a substantial likelihood of misidentification. To support his argument, the defendant points to Agent Pierce's testimony both at trial and at the suppression hearing that he had no recollection of the narcotics transaction and that his identification of the defendant was based on his viewing of the videotape.
In State v. Calloway, 97-796 (La.App. 5 Cir. 8/25/98), 718 So.2d 559, writ denied, 98-2435, 98-2438 (La.1/8/99), 734 So.2d 1229, this court stated:
A defendant challenging an identification procedure must prove that the identification was suggestive and that there was a substantial likelihood of misidentification. State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986). Even if the identification procedure is found to be suggestive, this alone *317 does not violate due process, for it is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. State v. Every, 96-185 (La.App. 5th Cir.7/30/96), 678 So.2d 952.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The factors to be considered in assessing reliability were initially set out in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and approved in Manson v. Brathwaite, supra. They include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation.
Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. Manson v. Brathwaite, supra; State v. Martin, 595 So.2d 592 (La.1992); State v. Winfrey, 97-427 (La.App. 5th Cir.10/28/97), 703 So.2d 63. Finally, in evaluating a challenge to an identification procedure, courts must consider the totality of the circumstances to determine whether an identification presents a substantial likelihood of misidentification. Manson v. Brathwaite, supra.

In the present case, Agent Pierce testified both at the suppression hearing and at trial that he had no independent recollection of the narcotics transaction and that he based his identification of the defendant on the videotape. The fact that the agent had no independent recollection of the defendant and viewed the videotape of the transaction just prior to viewing the photographic lineup leads us to conclude that the identification procedure was, in fact, suggestive. However, that does not end our inquiry. We must now determine whether there was a substantial likelihood of misidentification.
Having reviewed the factors set forth in Manson v. Brathwaite, supra, as well as the totality of the circumstances, we find that there was not a substantial likelihood of misidentification, and thus the trial court did not err in denying the defendant's motion to suppress. The transaction occurred during daylight hours; the officer was in close proximity to the defendant and had a clear view of him; and the time between the crime and the identification was short. In addition, the fact that the sale was recorded on videotape greatly reduces any risk of misidentification. We also note that the videotape was played for the jury at trial and defense counsel was given an opportunity to cross-examine Agent Pierce in an effort to discredit his identification.
Given these circumstances, we find that there was not a substantial likelihood of misidentification, and therefore, the trial court did not err in denying the defendant's motion to suppress.

ERROR PATENT REVIEW
In his third assigned error, the defendant requests that we review the record for errors patent in accordance with LSA-C.Cr.P. art. 920. Such a review reflects that the trial judge imposed an illegally lenient sentence insofar as he failed to specify that the first five years of the sentence be served without benefit of parole, probation, or suspension as required by LSA-R.S. 40:967B(4)(b). Under the law in effect at the time that the defendant was sentenced, this court is precluded from correcting the illegally lenient sentence since the state failed to properly preserve the error for appeal. See State v. Boles, 99-662 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059.
The record also reflects that the trial judge failed to observe the mandatory twenty-four hour delay between the denial *318 of the motion for new trial and the imposition of sentence. LSA-C.Cr.P. art. 873. However, the transcript reflects that defense counsel announced in open court after the denial of the motion that the defendant was ready for sentencing. Because of this announcement, we find that the delay was waived and thus there was no error in the trial court's immediate imposition of sentence. See State v. George, 570 So.2d 46 (La.App. 5 Cir.1990) and State v. Biglane, 99-111 (La.App. 5 Cir. 5/19/99), 738 So.2d 630.
We lastly note that while the trial judge advised the defendant of the prescriptive period for post-conviction relief set forth in LSA-C.Cr.P. art. 930.8, he did not specifically advise him that the delays begin to run from the date the judgment of conviction and sentence becomes final. Accordingly, we instruct the trial court to send appropriate written notice of the prescriptive period to the defendant within ten days of the rendering of this opinion and to file written proof that the defendant received such notice.
For the reasons set forth herein, the defendant's conviction and sentence are affirmed and the case is remanded to the trial court for further action in accordance with this opinion.
CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR FURTHER PROCEEDINGS.