777 So.2d 555 (2000)
STATE of Louisiana
v.
Andrew PAYNE.
No. 00-KA-1171.
Court of Appeal of Louisiana, Fifth Circuit.
December 13, 2000.
*557 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Rebecca Becker, Quentin P. Kelly, Assistant District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, Attorney for Defendant/Appellant.
Panel composed of GOTHARD and McMANUS, JJ., and H. CHARLES GAUDIN, Pro Tempore.
GOTHARD, Judge.
Defendant, Andrew Payne, appeals his conviction on a charge of two counts of distribution of cocaine in violation of LSA-R.S. 40:967A, and his sentence of life in prison as a three time felony offender. For reasons that follow, we affirm.
On April 19, 1999, the State filed a bill of information charging defendant with two counts of distribution of cocaine. He was arraigned and entered a plea of not guilty. On September 8, 1999, the defense filed a motion to appoint a sanity commission to determine whether defendant was competent to stand trial. The motion was granted and after a hearing, defendant was found competent to stand trial on November 11, 1999.
A jury trial began on December 15, 1999 when the jury was selected. On December 16, 1999, before the start of trial and out of the presence of the jury, the court considered and denied a pre-trial motion to suppress the evidence. After a trial on the merits completed the same day, the defendant was found guilty as charged. Defendant was sentenced on December 22, 1999 to serve fifteen years on each count without benefit of parole, probation or suspension of sentence. The sentences were ordered to run concurrently. On December 29, 1999 the State filed a multiple bill of information alleging defendant was a third felony offender. Defendant denied the allegations charged in the multiple bill and the matter was taken up by the court on January 12, 2000. After a hearing on the merits, the court found defendant to be a third felony offender and vacated the sentence on count one. The court re-sentenced defendant to life in prison without benefit of parole, probation, or suspension of sentence. Defendant's motion to reconsider the sentence was denied, after which a motion for appeal was filed.
This case arises out of two separate undercover drug purchases made on the same date by different undercover officers. On December 9, 1998, Agent Frank Williams of the Jefferson Parish Sheriff's Office was involved in an undercover operation to purchase drugs. On that date, *558 Agent Williams drove an unmarked car equipped with a video camera and radio to an area in Bridge City in Jefferson Parish. While in that area, Williams stopped at the intersection of Fourth and Commerce Streets and asked defendant if he knew where he could get a "twenty." Defendant asked Williams if he was a police officer, and Williams replied that he was not. Defendant then asked Williams to wait. Williams turned around and pulled to the side of the road and waited for defendant. A brief time later, defendant returned and handed Williams an off-white, rock-like object and Williams paid defendant $20 for the object.
Williams then left the area and met with the other officers involved in the surveillance. After meeting the officers, Williams turned the object he purchased from defendant over to Agent Corey Wilson.
On January 19, 1999, Williams reviewed the videotape of the transaction. After viewing the videotape, Williams viewed a photographic lineup and identified defendant's photograph as being a photograph of the person who sold him the rock-like object.
On December 9, 1998, Agent Michael Jordan of the Jefferson Parish Sheriff's Office was also driving a camera equipped undercover car in Bridge City. Jordan also went to the corner of Fourth and Commerce Streets and asked defendant if he could buy a "twenty." Defendant told Jordan to wait. Defendant then approached Jordan's car and handed Jordan an off-white, rock-like object. Jordan then handed defendant $20.00.
After making the transaction, Jordan left the area and met with Agent Declouet. Jordan turned over the object he purchased from defendant and the videotape of the transaction. The object was sealed and marked with an item number.
In January 1999, Jordan viewed the videotape of the transaction. After reviewing the videotape, Jordan viewed a photographic lineup. Jordan identified defendant's photograph as a photograph of the person who sold him the object on December 9, 1998.
At trial, the State also presented testimony of Charles Krone, who was accepted pursuant to a stipulation as an expert in the analysis and testing of controlled dangerous substances. Krone testified that he tested two off-white objects that were provided to him. Krone concluded that each of the samples tested was cocaine. During the testimony of Williams and Jordan, the items that were tested by Krone and found to contain cocaine were identified as the objects that each officer purchased from defendant.
In brief to this court defendant assigns two errors. In the first he argues the conviction was highly suspect due to the tainted identifications and the lack of evidence establishing a proper chain of custody.

Identification
Defendant argues that the identifications in the present case should have been suppressed because the officers viewed the videotapes of the transactions prior to identifying defendant's photograph in the lineups. The State responds that the trial court correctly denied defendant's motion to suppress the identification because there was not a substantial likelihood of misidentification.
A defendant who seeks to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Joseph, 96-187 (La. App. 5 Cir. 11/14/96), 685 So.2d 237, 245, writ granted in part on other grounds, 96-2998 (La.5/9/97), 693 So.2d 782. However, even should the identification be considered suggestive, this alone does not violate due process, for it is the likelihood of misidentification which violates due process, *559 not merely the suggestive identification procedure. State v. Joseph, supra.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The factors to be considered in assessing reliability were initially set out in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and approved in Manson v. Brathwaite, supra. They include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and, (5) the time between the crime and the confrontation.
Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. Manson v. Brathwaite, supra; State v. Martin, 595 So.2d 592 (La.1992); State v. Winfrey, 97-427 (La.App. 5 Cir.10/28/97), 703 So.2d 63, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481. Finally, in evaluating a challenge to an identification procedure, courts must consider the totality of the circumstances to determine whether an identification presents a substantial likelihood of misidentification. Manson v. Brathwaite, supra.
In the present case, Agent Williams and Agent Jordan identified defendant in a photographic lineup after viewing the videotapes of the transactions. Defendant argues that this procedure was impermissibly suggestive and the identifications should have been suppressed.
This Court was faced with this same issue in State v. Pugh, 99-851 (La.App. 5 Cir. 12/21/99), 750 So.2d 313, writ denied, 00-0206 (La.8/31/00), 766 So.2d 1273. In Pugh, the agent who made the identification testified both at the suppression hearing and at trial that he had no independent recollection of the narcotics transaction and that he based his identification of the defendant on the videotape. We found that the identification procedure was suggestive because the agent had no independent recollection of the defendant and viewed the videotape of the transaction just prior to viewing the photographic lineup.
Finding that the identification procedure was suggestive, this Court then examined whether there was a substantial likelihood of misidentification. We reviewed the factors set forth in Manson v. Brathwaite, supra, as well as the totality of the circumstances, and found that there was not a substantial likelihood of misidentification, and thus the trial court did not err in denying the defendant's motion to suppress. It was significant that the transaction occurred during daylight hours; the officer was in close proximity to the defendant and had a clear view of him; and the time between the crime and the identification was short. Further, the sale was recorded on videotape, which greatly reduced any risk of misidentification. The videotape was played for the jury at trial and defense counsel was given an opportunity to cross-examine the agent in an effort to discredit his identification.
In the present case, the agents viewed the videotapes prior to identifying defendant in the photographic lineup. Agent Jordan testified that he identified defendant based on the videotape and not his memory of the transaction. We find that this situation is analogous to the one presented to this Court in Pugh. As in Pugh, we find the agents' viewing of the videotape suggestive. Therefore, the issue becomes whether there is a substantial likelihood of misidentification.
Many of the same factors this Court noted in Pugh, which reduced the likelihood of misidentification, are also present in the instant case. The transactions were face-to-face transactions conducted in close proximity. The transactions *560 occurred during the daylight hours. Also, the videotapes of the transactions were played for the jury. Based on these factors we find that, while the viewing of the videotapes of the transactions prior to viewing the lineups was suggestive, there was no substantial likelihood of misidentification. Accordingly, we find no merit in this assignment.

Chain of custody
Defendant argues that the videotapes of the transactions and the cocaine should have been excluded because the State failed to establish a correct chain of custody. The State responds that defendant failed to preserve this issue for appeal because the items were admitted without objection, and that the State sufficiently identified the items.
In State v. Pendelton, 96-367 (La.App. 5 Cir. 5/28/97), 696 So.2d 144, writ denied, 97-1714 (La.12/19/97), 706 So.2d 450, the defendant argued that various items of clothing were improperly admitted into evidence without either an adequate showing of the chain of custody or sufficient identification with the defendant. State v. Pendelton, supra, 696 So.2d at 152. This Court found that the issue was not preserved for appeal, as each of the challenged exhibits was admitted at trial without any objection from the defense. Further, we found that the matter was therefore not properly before the court based on LSA-C.Cr.P. art. 841. Id.
In the present case, defendant did not object to the introduction of the cocaine or the videotape. Therefore, defendant did not preserve this issue for review and it is not properly before this court. Thus, it will not be considered.
Defendant concedes that no objection was made to the introduction of the evidence at trial, but argues that the lack of an established chain of custody goes to the weight of the State's evidence in consideration of his motion for post verdict judgment of acquittal and/or new trial. In that motion defendant argues that the evidence presented is insufficient to support a finding that defendant distributed cocaine. The State responds that sufficient evidence was presented to support a finding that defendant distributed cocaine.
In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also, LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308, 1309 (La.1988).
A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the fact-finding function of the jury only to the extent necessary to assure that the defendant has received due process of law. State v. Bordenave, 95 2328 (La.4/26/96), 678 So.2d 19, 20 (quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789). It is not the function of an appellate court to assess credibility or reweigh the evidence. Appellate review for minimal constitutional sufficiency of evidence is a limited one restricted by the standard developed in Jackson v. Virginia, supra. State v. Rosiere, 488 So.2d 965, 968 (La.1986) (and the cases cited therein).
In the present case, defendant was convicted on two counts of distribution of cocaine in violation of LSA-R.S. 40:967A. The State presented direct testimony of Agents Williams and Jordan that they purchased off-white objects from defendant. The agents identified defendant's photograph in a photographic lineup as the person who sold them the cocaine. The videotapes of the transactions were played for *561 the jury. Finally, the items that the agents purchased from defendant were tested and these tests confirmed the presence of cocaine.
Based on this direct testimony, we find that the State presented sufficient evidence for a rational jury to find that defendant distributed cocaine. This assignment of error is without merit.
In the second assignment of error defendant argues the imposition of a life sentence in this case is excessive under the circumstances. Defendant argues that the enhanced sentenced imposed is constitutionally excessive. The State responds that the record supports the sentence imposed and it is not constitutionally excessive.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Lassere, 95-1009 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, writ denied, 96-2655 (La.4/18/97), 692 So.2d 445. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id. The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Id.
In State v. Sanders, 98-855 (La.App. 5 Cir. 5/19/99), 734 So.2d 1276, 1278, writ denied, 99-1980 (La.1/7/00), 752 So.2d 175, this Court articulated:
In reviewing a sentence for excessiveness, this Court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. The trial judge is afforded wide discretion in determining a sentence and, if the record supports the sentence imposed, the court of appeal will not set aside a sentence for excessiveness. A sentence may be reviewed for excessiveness even though it is within statutory range. (citations omitted)
State v. Sanders, 734 So.2d at 1278.
The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Lobato, 603 So.2d 739, 751 (La.1992) (citing State v. Square, 433 So.2d 104, 110 (La. 1983)).
In the present case, defendant was found to be a third felony offender under LSA-R.S. 15:529.1 and sentenced to life imprisonment. LSA-R.S. 15:529.1A(1)(b)(ii) provides that:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation cocaine.
LSA-R.S. 15:529.1.
In sentencing defendant the trial court noted that:
Let me make one other comment for the record. The Court is aware that the defendant not only has the two previous felony convictions, but his conduct in this court was reprehensible. That he has shown no remorse for the crimes that he has committed and has been a source of disruptions. And, accordingly, the Court hashe has really raisedno sympathy in the eyes of the Court because of his conduct. And the statute provides for a penalty of life imprisonment, and in this case I think it was justified.
*562 In the present case, defendant argues in his motion to reconsider sentence that the sentence imposed is excessive, but does not argue how the imposition of the statutorily mandated sentence in this case is constitutionally excessive.
The Louisiana Supreme Court has upheld the constitutionality of the Habitual Offender Law embodied in LSA-R.S. 15:529.1. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993). Nonetheless, the courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution even though it falls within the statutory limits provided by the Legislature. State v. Lindsey c/w State v. Webster, 99-3302, 99-3256 (La.10/17/00), 770 So.2d 339, 343-44. State v. Johnson, supra at 676. In State v. Johnson, supra at 676, 677, the Supreme Court set guidelines for when the courts may exercise their discretion to declare excessive a minimum sentence mandated by the Habitual Offender Law:
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality.... Under the Habitual Offender Law those third and fourth offenders who have a history of violent crime get longer sentences, while those who do not are allowed lesser sentences. So while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.
Instead, to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
(Citations omitted)
In the instant matter, the trial court imposed the sentence required under the statute. We do not find the defendant has successfully rebutted the presumption under the guidelines of State v. Johnson, supra. The sentence imposed is not constitutionally excessive. This assignment of error is without merit.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). In that review we note that the trial court originally sentenced defendant to 15 years on each count and stipulated that the first five years were to be served without benefit of parole, probation, or suspension of sentence. However, the original commitment does not include the stipulation that the first five years of each sentence are to be served without benefit of parole, probation or suspension of sentence. It is also noted that the original commitment states that defendant pled guilty instead of going to trial. When there is a discrepancy between the minutes and the transcript, the transcript must prevail. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly the trial court is ordered to amend the original commitment to reflect the correct plea and sentence.
For the foregoing reasons, the defendant's conviction and sentence are affirmed. The matter is remanded to the trial court for amendment of the commitment as ordered in this opinion.
AFFIRMED AND REMANDED WITH ORDER.