[ .SUSAN M. CHEHARDY, Judge.
On August 12, 2008, the Jefferson Parish District Attorney filed a bill of information charging defendant, Ernest Payne, with cocaine distribution, a violation of La. R.S. 40:967(A). Defendant was arraigned on August 13, 2003, and pled not guilty.
Defendant filed various pre-trial motions, including a motion to suppress the identification. The trial court heard and denied the motion on February 6, 2004. Defendant filed a writ application in this Court, challenging the trial court’s ruling. On March 22, 2004, this Court denied relief, stating:
On the showing made, we find no error in the trial court’s denial of defendant’s motion to suppress identification. See State v. [Andrew] Payne, 00-1171 (La.App. 5 Cir. 12/13/00), 777 So.2d 555, 558-560 (while viewing of videotapes of under-cover transactions prior to viewing the lineups was suggestive, there was no substantial likelihood of misiden-tification).
State v. Payne, 04-220 (La.App. 5 Cir. 3/22/04)(unpublished writ disposition).
On May 17, 2004, defendant withdrew his plea of not guilty, and entered a plea of guilty as charged. He reserved the right to appeal the trial court’s denial of his suppression motion under the provisions of State v. Crosby, 338 So.2d 584 (La.1976). In accordance with a plea agreement in which the State agreed not to file a habitual offender bill of information against defendant, the court sentenced defendant to twelve years at hard labor, with the first two years to be served without benefit of parole, probation or suspension of sentence. On June 4, 2004, defendant filed a motion for appeal, which was granted on June 9, 2004.

Facts 

[1]

Agent Vincent Carter is assigned to the Narcotics Division of the Jefferson Parish Sheriffs Office. He testified that, on November 6, 2002, he was instructed to attempt undercover drug buys in the Fourth Street area of Marrero. Agent Carter used an unmarked car that was equipped with video and audio surveillance equipment.
Agent Carter encountered defendant, Ernest Payne, on Robinson Street. Agent *53 Carter testified that he was not previously acquainted with the defendant. Agent Carter asked defendant where he could get a “forty,” which Carter testified is a slang term for $40.00 worth of crack cocaine. Defendant told Agent Carter to follow him then rode his bicycle to the end of the street; Agent Carter followed in his vehicle. Defendant then produced three off-white rock-like objects, Agent Carter handed defendant $40.00, and defendant gave Agent Carter the three rocks. The exchange was recorded on videotape. The three rocks later tested positive for cocaine.
Agent Wally Davis testified that Sergeant Joe Williams viewed the videotape of the transaction and recognized the perpetrator as Ernest Payne. Based on that information, Davis compiled a photographic lineup which included defendant’s picture. Davis showed the lineup to Agent Carter on December 4, 2002. Agent Carter identified defendant as the person from whom he had |4purchased crack cocaine on November 6, 2002. Agent Carter testified that he likely watched the videotape of the transaction before viewing the photographic lineup.
In his sole assignment of error, defendant argues that the trial court erred in denying his Motion to Suppress Identification Evidence.[2] Defendant complains that the identification made by Agent Carter was unreliable. He suggests that Agent Carter’s photographic identification was not based upon his independent recollection, but upon his viewing of the transáction on videotape before he was shown the photographic lineup.
Defendant complains that Agent Carter’s identification was suggestive and unreliable, as Carter gave only a sketchy description of' the perpetrator at the time of the offense, and did not view the photographic lineup until a month later. He further argues that the identification should have been suppressed, as it was based on Agent Carter’s viewing ■ of the videotape rather than on independent memory. Defendant cites State v. Andrew Payne, 00-1171 (La.App. 5 Cir. 12/13/00), 777 So.2d 555, writ denied, 01-0118 (La.11/21/01), 802 So.2d 626, in support of his argument.
In State v. Andrew Payne, this Court outlined the law governing the admissibility of identification procedures:
A defendant who seeks to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidenti-fication as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Joseph, 96-187 (La.App. 5 Cir. 11/14/96), 685 So.2d 237, 245, writ granted in part on other grounds, 96-2998 (La.5/9/97), 693 So.2d 782. However, even should the identification be considered suggestive, this alone does not violate due process, for it is the likelihood of | Rmisidentification which violates due process, not merely the suggestive identification procedure. State v. Joseph, supra.
*54 Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The factors to be considered in assessing reliability were initially set out in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and approved in Manson v. Brathwaite, swpra. They include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and, (5) the time between the crime and the confrontation.
Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. Manson v. Brathwaite, supra; State v. Martin, 595 So.2d 592 (La.1992); State v. Winfrey, 97-427 (La.App. 5 Cir.10/28/97), 703 So.2d 63, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481. Finally, in evaluating a challenge to an identification procedure, courts must consider the totality of the circumstances to determine whether an identification presents a substantial likelihood of misidentification. Manson v. Brathwaite, supra.
Id. at 558-559.
In State v. Andrew Payne, the law enforcement officer viewed the transaction videotape prior to identifying defendant in the photographic lineup. The officer testified that he identified defendant based on the videotape and not his memory of the transaction. The Andrew Payne court, like the Pugh court, found the officer’s viewing of the videotape suggestive. The Andrew Payne court then evaluated the likelihood of misidentification using the Manson factors and again found no likelihood of misidentification. The Andrew Payne court noted that the transactions were face-to-face transactions conducted in close proximity during the daylight hours. Also, the videotapes of the transactions were played for the jury.
In State v. Andrew Payne, this Court relied on State v. Pugh, 99-851 (La.App. 5 Cir. 12/21/99), 750 So.2d 313, unit denied, 00-0206 (La.8/31/00), 766 So.2d 1273. In Pugh, the agent who made the identification testified both at the suppression hearing and at trial that he had no independent recollection of the |finarcotics transaction and that he based his identification of the defendant on the videotape. The Pugh court found that the identification procedure was suggestive because the agent had no independent recollection of the defendant and viewed the videotape of the transaction just prior to viewing the photographic lineup. After finding that the identification procedure was suggestive, this Court then examined whether there was a substantial likelihood of misidentifi-cation.
In Pugh, this Court reviewed the Manson factors as well as the totality of the circumstances, and found that there was not a substantial likelihood of misidentifi-cation. This Court noted that the transaction occurred during daylight hours; the officer was in close proximity to the defendant and had a clear view of him; and the time between the crime and the identification was short. Further, the sale was recorded on videotape, which greatly reduced any risk of misidentification. The videotape was played for the jury at trial and defense counsel was given an opportunity to cross-examine the agent in an effort to discredit his identification.
In the instant case, as in Andrew Payne and Pugh, narcotics agents identified the defendant in a photographic lineup after viewing a videotape of undercover drug *55 transactions. Further, Sergeant Joe Williams recognized the subject on the videotape and identified him by name after viewing the videotape of the cocaine transaction. Based on Sergeant Williams’ identification, Agent Davis placed a picture of defendant in a photographic lineup.
Agent Carter testified that he most likely viewed the videotape of the transaction before looking at the photographic lineup on December 4, 2002, one month after the drug buy. Upon viewing the lineup, Agent Carter identified defendant as the person from whom he bought crack cocaine on November 6, 2002. Agent Carter testified that he watched the videotape again prior to the motion hearing.
17As defendant notes, the Andrew Payne court found that the agent’s viewing of the videotape made the identification suggestive. We agree.
Nevertheless, the Andrew Payne court found there were factors that reduced the likelihood of misidentification. The drug buys in that case involved face-to-face transactions that took place during daylight hours. The videotape was played for the jury, greatly reducing the probability of misidentification.
In this case, the face-to-face drug transaction also took place during daylight hours. Agent Carter had ample opportunity to see the perpetrator at the time of the offense. Further, the existence of the videotape in the instant case greatly reduces the probability of misidentification. The trial judge in the instant case, in denying defendant’s motion, stated:
Another important point, I believe, and the reason I wanted to-well, the evidence will speak for itself, the nature of the evidence. But there will be a jury in this case, the jury will view the videotape and the jury will be able to decide based upon their observation of the defendant in court and the observation of the videotape whether that was the same person, the person in court is the same person in the video.
Based on the holdings in Andrew Payne and Pugh, we cannot say that the officer’s viewing of the videotape and the length of time between the transaction and the identification led to the likelihood of misidenti-fication. Thus, we find no error in the trial judge’s denial of defendant’s motion to suppress the identification. While the identification procedure may have been suggestive, we do not find the likelihood of misidentification.
Finally, we have reviewed the record for errors patent pursuant to La.C.Cr.P. art. 920. The review reveals no errors patent that warrant corrective action.

AFFIRMED.

. The facts surrounding the instant offense are gleaned from testimony at the February 6, 2004 suppression hearing.

. In his brief, defendant refers to the argument he presented in his writ application. Rule 2-1.14 of the Uniform Rules — Courts of Appeal, provides that ”[a]ny record lodged in this court may, with leave of court, be used, without necessity of duplication, in any other case on appeal or on writ.” Since defendant has failed to ask leave of court to include his writ application, this Court need not consider the arguments and authority defendant offered therein. In light of the facts that the argument defendant made in his writ application is essentially the same as the one he raises on appeal and the State does not object to defendant’s referencing his writ application, we will, in the interest of judicial economy, address the arguments defendant offered in his writ application and on appeal.